UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE ARREST OF ROBERT CRESPO-AROCHO, AND THE SEARCH OF INFORMATION ASSOCIATED WITH CELL PHONE CALL NUMBER ENDING -2677 THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE | Case No. 3:24-MJ- 41 (TOF)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**COMPLAINT, ARREST WARRANT, AND SEARCH WARRANT**

I, Barry Hertzler, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AFFIANT BACKGROUND**

1.      I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been employed as a New Britain Police Officer with the Town of New Britain, Connecticut since March of 2013. Before that, starting in June 2009, I was a member of the Berlin Police Department. Since April 2023, I have been a Task Force Officer with the Federal Bureau of Investigation (FBI). I am currently assigned to the Violent Crime Task Force Squad in the FBI's New Haven Field Office. As a New Britain Police Detective, I have been the principal investigator in investigations involving homicides, narcotics and firearms trafficking, violent gang and criminal enterprises, drug trafficking organizations. As a result of my training and experience, I am familiar with federal criminal law, including laws concerning Unlawful Flight to Avoid Prosecution and illegal firearms possession. I have executed numerous arrest warrants for violations of federal law, and I have executed numerous search warrants, including search warrants for location information associated with cellular devices.

2. I make this affidavit in support of a criminal complaint and arrest warrant for Robert CRESPO-AROCHO (b. 2003). Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that, from on or about January 17, 2024 through the present, in the District of Connecticut and elsewhere, in violation of 18 U.S.C. § 1073 (flight to avoid prosecution), CRESPO-AROCHO did move and travel in interstate commerce with intent to avoid prosecution under the laws of the State of Connecticut for a crime that is a felony under the laws of the State of Connecticut, specifically, Murder, in violation of Conn. Gen. Stat. § 53a-54a; Carrying a Pistol without a Permit, in violation of Conn. Gen. Stat. § 29-35; and Criminal Use of a Firearm, in violation of Conn. Gen. Stat. § 53a-216c.

3. I also make this affidavit in support of an application for a search warrant for information associated with the cellular device assigned call number 609-427-2677 (the TARGET CELL PHONE), which is a cellular device subscribed to CRESPO-AROCHO. The information sought is in the custody or control of T-Mobile, a wireless communications service provider that is headquartered in Parsippany, New Jersey. As a provider of wireless communications service, T-Mobile is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

4. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require T-Mobile to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

5.      Because I am seeking the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices (pen-trap devices) to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the TARGET CELL PHONE.

6.      For the reasons set forth herein, there is probable cause to believe that the information sought from T-Mobile will constitute evidence of a violation of 18 U.S.C. § 1073 (flight to avoid prosecution) as well as the location of a person to be arrested.

7.      The information herein is based on my training and experience, personal knowledge, and information obtained from records, other law enforcement officers, and witnesses. I have not included all the facts known to me in this affidavit, just those facts that I believe are necessary to establish probable cause to support the requested arrest warrant and search warrant.

8.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; see 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.      On January 17, 2024, at 3:57 p.m., the New Britain Public Safety and Telecommunication Center received a phone call from the Hospital of Central Connecticut New

Britain General Campus Emergency Room for a reported male party suffering from a gunshot wound. Hospital Security reported the gunshot victim was transported to the Emergency Room by another party in a white Acura with a black hood.

10. New Britain Police reviewed CCTV surveillance footage from the hospital and confirmed the foregoing. Police also found the vehicle that had transported the victim and saw an apparent bullet hole in the windshield and an apparent bullet strike on the driver's side mirror housing. The passenger side window was open, and the officers could clearly see red blood like substance on the front driver's side seat and the front passenger seat.

11. The gunshot victim was identified as Herzel David Arroyo-Cabrera (b. 1999). He had sustained at least one gunshot wound where the bullet appeared to pass through his lower torso area. He was pronounced deceased at the hospital on January 17, 2024 at 4:47 p.m.

12. New Britain Police Officers learned from various callers to dispatch that the shooting occurred in the Broad Street and Beaver Street area in New Britain. Officers responded to the area and found evidence of a shooting, including two spent 9mm shell casings.

13. Through witness interviews, reviews of city and local business cameras, reviews of records from social media and telephone accounts obtained under exigent circumstances, and other means, investigators identified Robert CRESPO-AROCHO (b. 2003) as the person who shot the victim. The shooting occurred after the victim's vehicle bumped into CRESPO-AROCHO's vehicle. A passenger from the victim's vehicle then drove the victim to the hospital. The victim and CRESPO-AROCHO reportedly knew each other and had "beef."

14. Through social media records, investigators identified the TARGET CELL PHONE (609-427-2677), which was confirmed to be registered to CRESPO-AROCHO with T-

Mobile. In an interview with police, CRESPO-AROCHO's girlfriend also provided the TARGET CELL PHONE NUMBER as CRESPO-AROCHO's number.

15. T-Mobile provided, on an emergency basis, 48hr call detail records with cell tower information as well as "ping" locations (an approximate longitude/latitude generated by the phone company for the cell phone) for the TARGET CELL PHONE.

16. The first ping received at 10:48pm on January 17, 2024 showed that the TARGET CELL PHONE was not obtainable and a message of "Absent Subscriber" was listed. I know that when a cellular device is powered down that this type of message is displayed from the phone carrier for pings. Call detail records showed the TARGET CELL PHONE to be in the area of the homicide when it occurred around 3:47pm. No other listed records available for the TARGET CELL PHONE after 6:59pm.

17. On January 18, 2024, at 12:23am, police received a ping for the TARGET CELL PHONE showing it to be in the Orlando, Florida area.

18. Information from the Orlando Florida Police Department at Orlando International Airport confirmed that CRESPO-AROCHO boarded a flight from Bradley International Airport that departed at 9:36pm on January 17, 2024 and arrived in Orlando, Florida shortly after midnight on January 18, 2024.

19. On January 18, 2024, GA-15 New Britain Connecticut Superior Court Judge Hillary Strackbein issued an extraditable arrest warrant for CRESPO-AROCHO for violations of Conn. Gen. Stat. § 53a-54a (Murder); Conn. Gen. Stat. § 29-35 (Carrying a Pistol without a Permit); and Conn. Gen. Stat. § 53a-216c (Criminal Use of a Firearm).

20. Based on my training and experience, individuals typically carry their cell phones on their person as a means to communicate with others, to navigate, and to entertain themselves, among other purposes.

21. Based on the information herein, there is probable cause to believe that CRESPO-AROCHO fled the State of Connecticut to avoid prosecution on the charges identified above, that he is still carrying the TARGET CELL PHONE, and that information concerning that device's location will tend to reveal the location of CRESPO-AROCHO, a person to be arrested.[1]

**Applicable Cellular Phone Technology**

22. In my training and experience, I have learned that T-MOBILE is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data, and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data, also known as "tower/face information" or "cell tower/sector records," identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the

---

[1] The prosecutor assigned to this matter, AUSA Robert Ruff, has advised me that a defendant need not have been charged with the subject state offenses before his flight to constitute a violation of 18 U.S.C. § 1073, and that it is sufficient if the defendant believed he would be charged with the subject state offenses and acted in that belief in traveling across state lines. *See* 2 Modern Federal Jury Instructions, Criminal ¶ 38.03, Instruction 38-15 ("Sand," available on LexisNexis).

"sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or GPS data.

23. Based on my training and experience, I know that T-MOBILE can collect E-911 Phase II data about the location of the TARGET CELL PHONE, including by initiating a signal to determine the location of the TARGET CELL PHONE on T-MOBILE's network or with such other reference points as may be reasonably available.

24. Based on my training and experience, I know that T-MOBILE can collect cell-site data about the TARGET CELL PHONE. Specifically, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-MOBILE typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

25. Based on my training and experience, I know that telephone companies like T-MOBILE also collect data about the speed with which signals travel between cellular telephones and cellular towers ("per call measurement data" or "PCMD"). For each cellular telephone accessing its network, providers such as T-MOBILE use PCMD and other data to calculate and

record the estimated location of that cellular telephone. T-MOBILE refers to the resulting location information as Timing Advance Information, Timing Advance Report Date, and/or "True Call."

26. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers, as transmitted from a cellular device to a cellular antenna or tower, can be collected by the service provider and indicate the identity of the cellular device making the communication without revealing the communication's content.

27. Based on my training and experience, I know that wireless providers such as T-MOBILE typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-MOBILE typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.

## AUTHORIZATION REQUEST

28. Based on the foregoing, I request that the Court issue the proposed arrest warrant.

29. I further request that the Court issue the proposed search warrant pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41, directing T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. I also request that the Court authorize the use of a pen register and trap and trace device as the information sought is material and relevant to an on-going investigation.

30. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on T-Mobile's network, and at such intervals and times as directed by the government. The government will compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

31. Because the warrant will be served on T-MOBILE, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

32. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **March 18, 2024**, which will be approximately 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET CELL PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.

*See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

Respectfully submitted,

Barry Hertzler
FBI Task Force Officer

Subscribed and sworn to before me by telephone
on January 18, 2024, in Hartford, Connecticut.

Date: 2024.01.18
18:21:33 -05'00'

HON. THOMAS O. FARRISH
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**
**Property to Be Searched**

1. Records and information associated with cellular telephone call number 609-427-2677 (the TARGET CELL PHONE), that is stored at premises controlled by T-Mobile (the PROVIDER), a wireless telephone service provider headquartered in Parsippany, New Jersey.

2. The TARGET CELL PHONE.

## ATTACHMENT B
## Particular Things To Be Seized

I.    **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the account listed in Attachment A **for the time period January 17, 2024 through the present, AND for the period extending 30 days from the date this warrant is issued**:

a. The following information about the customers or subscribers of the account:

    i. Names (including subscriber names, user names, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the account, including:

    i. the date and time of the communication, the method of the communication, and the source and destination of the communication;

      ii. Call detail records to include numbers dialed, incoming numbers, call durations, signaling and communications processing information, geographic locations of towers and sectors activated, sent and received the account, for any form of communication it is capable of including: voice, VoIP, VoLTE, text, SMS, MMS, internet, mobile-to- mobile, any push to talk feature, non-billed calls, uncharged call detail, airtime usage data, Automated Message Accounting records and data bases, calls-to-destination data and packet data, as available without communications content and excluding post-cut-through dialed digits; and

      iii. Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as all available per-call measurement data (PCMD), Timing Advance Information, Timing Advance Report Date, and True Call data.

   c. All precise location information, including E-911 Phase II data, GPS data, and Latitude-longitude data.

In approving this warrant, the Court finds reasonable necessity for the seizure of the location information set forth above. *See* 18 U.S.C. § 3103a(b)(2). This warrant does not authorize the seizure of any tangible property or the contents of any communications.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1073 (flight to avoid prosecution) by, or the location of, Robert CRESPO-AROCHO, a person to be arrested.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.